[No. 13554. In Bank. — May 5, 1890.]

COUNTY OF SAN LUIS OBISPO, Appellant, v. MADISON GRAVES, License-tax Collector, Respondent.

County Ordinance — Conflict with General Law. — A county ordinance in conflict with a valid general law is void; but the ordinance must prevail, notwithstanding conflict with a general statute, if such statute is unconstitutional, and the ordinance harmonizes with the constitution and with other general laws.

Id. — Constitutional Law — County License Tax — Payment into City Treasury — Special and Local Legislation — County Government Act. — Subdivision 15 of the county government act as amended in 1889, which provides that money collected by the county license-tax collector in counties of the twenty-seventh class, for licenses within the limits of any incorporated city or town, shall be paid into its treasury for street improvements, is void, as being special and local legislation, not germane to the section of the general law to which it is attached, and in conflict with the general laws upon that subject, and in conflict with sections 4, 5, and 16 of article 11, section 11, of article I, and sections 25 (subdivision 9) and 33 of article 4, of the constitution. License taxes collected under the provisions of the code, or of an ordinance of a board of supervisors, are collected for the use of the county, and it is the duty of the collector to deposit them in the county treasury. It is only municipal license taxes imposed and collected for municipal purposes which can be paid into the city treasury.

Appeal from a judgment of the Superior Court of San Luis Obispo County.

The facts are stated in the opinion of the court.

*Graves, Turner & Graves,* for Appellant.

*William Shipsey,* for Respondent.

Fox, J. — The plaintiff is a county of the twenty-seventh class. The respondent is license-tax collector of the county. The city of San Luis Obispo is a municipality of the sixth class, situate within the county. The county is divided into five supervisor districts, numbered from 1 to 5. District No. 3 consists of the city and one election precinct outside the city, known as Orcutt

election precinct. The city itself comprises three of the county election precincts, numbered 1, 2, and 3. The county, exclusive of the territory lying within the corporate limits of the city, is divided into seventeen road districts, numbered from 1 to 17. Road district No. 5 is composed of the territory embraced in Orcutt election precinct. No part of the territory within the municipality belongs to any road district in the county.

On the 8th of March, 1889, the board of supervisors passed an ordinance "concerning licenses, and to provide for the collection thereof." By section 1 of this ordinance a license tax was imposed "upon every kind of business carried on in the county of San Luis Obispo, and all shows, exhibitions, and lawful games carried on therein." Section 20 provided that the licenses must be procured from the license-tax collector, and that no license issued under the order should authorize any person to carry on any business within the limits of any incorporated city or town empowered by its charter to' levy city or town licenses, unless such person also procure the license required by the ordinances or orders of such city or town. Section 24 of the ordinance reads as follows: —

"On the first Monday of each month the license-tax collector must return to the auditor all the unsold licenses and be credited therewith, and the auditor must apportion all license money collected to the road funds. of the several supervisorial districts of the county from which the said license money was collected, and the license-tax collector must appear at the county treasurer's office and pay into the road fund of the several supervisorial districts the license money so appropriated (less his compensation or percentage) for licenses sold during the preceding month, take the treasurer's receipt therefor, and file duplicates with the auditor. The auditor must credit the license-tax collector, and charge the treasurer therewith."

The county licenses collectible within the city of San Luis Obispo, under this ordinance, amounted to one thousand dollars per quarter, but in road district No. 5 (Orcutt election precinct) no business was carried on which was subject to license tax under the ordinance.

In August, 1889, the defendant collected twenty-two dollars for license to carry on a business within the corporate limits of the city. On the 5th of September, 1889, the county auditor made a written demand upon him to pay over this twenty-two dollars to the county treasurer, in accordance with the terms of the said ordinance, which the defendant failed to do, and thereupon the alternative writ of mandate was sued out of the superior court, commanding the defendant to pay said money into the county treasury, as demanded, or show cause why he did not do so.

On the return of the writ, the defendant admitted the collection and possession of the money, and alleged that he held the same to pay it over to the city treasurer of the city of San Luis Obispo, "under the provisions of subdivision 15 of section 189 (as amended in 1889), of an act of the legislature of the state of California, entitled 'An act to establish a uniform system of county and township governments,' approved March 14, 1883." (Stats. 1889, p. 283.)

The proceeding is evidently one to determine the conflict between section 24 of the ordinance and subdivision 15 of section 189 of the county government act. That section is in relation to counties of the twenty-seventh class, and subdivision 15 thereof contains this provision:—

"All moneys collected in counties of this class for licenses within the limits of any incorporated city or town shall be paid over by the officer collecting the same to the officer authorized to receive the same of the incorporated city or town in which such licenses are collected, to be expended by the authorities thereof

in the improvement of the streets of such incorporated city or town wherein such license money was collected."

There can be no question, and we understand it to be conceded, that if this provision of the county government act is constitutional, so much of the ordinance as provides for the payment of the moneys collected for license tax upon business carried on within the municipality into the county treasury is in conflict with the general law, and void.

It is claimed by appellant that this provision of the state statute is special and local, in direct conflict with certain provisions of the constitution, and void, and we have no doubt that it is so. It is found, it is true, in an amendment to a general law. But it is upon a subject which is not germane to the section or subdivision of the general law to which it is attached, and undertakes to establish for and in a single class of counties a rule which is in conflict, upon the subject of which it treats, with the law prescribed for all other counties and classes of counties in the state.

In the first place, the most general of all the laws of the state, the code (Pol. Code, pt. 3, tit. 7, c. 15) treats of the subject of licenses. It prescribes all the different classes of business upon which a license tax may be imposed, and also prescribes a rate of license which shall be collected upon the several classes of business, in all the counties of the state, and the mode and manner of collecting the same, and by section 3363 provides that the moneys so collected shall be paid into the general fund of the county. In the absence of other legislation upon the subject, the county authorities would undoubtedly be required to collect the rate of license prescribed in this chapter. But as the question of rate is largely a matter of local interest, the legislature has, by other and appropriate legislation, authorized the boards of supervisors by ordinance to fix the rates, in the several counties, to be imposed upon all business authorized by law

to be so taxed, and to provide for the collection thereof; but it has in no instance that has come under our observation authorized any board of supervisors to permit any business which the general law requires to be licensed to be carried on in any county without a license. The rule prescribing what business shall be charged with a license is uniform throughout the state. The rate to be charged may be prescribed by the local authorities. Whether the rate which may be fixed by the board of supervisors can be less than that prescribed by the general law, we are not now called upon to say. Whether it be the one fixed by the board of supervisors, or by the general law, the only exception made by statute to the rule that it must be paid into the general fund of the county treasury is that found in the provision above quoted from the proviso attached to subdivision 15 of section 189 of the county government act as amended in 1889. The subject of the proviso has no relation whatever to the subject of the section, or of the subdivision thereof to which it is attached. The subject of the disposition of the license-tax fund is not germane to any part of the entire act of which the section is a part. That act provides for the organization, classification, and powers of counties, and the powers, duties, and compensation of county officers. The organization, powers, and duties of counties and their officers is provided for in a portion of the act which is common to all the counties. Then follows a provision classifying the counties, — a duty which the constitution imposed upon the legislature. The sole purpose of that classification is declared by the constitution to be that of regulating the compensation of the officers in proportion to their duties. (Const., art. 11, sec. 5.) All the law relative to the powers and duties of counties and their officers is found in the sections of the act preceding the one making the classification (sec. 162), which expressly declares the purpose of the classification to be the same as that prescribed in the constitution.

The sections following this, to and including section 210, are devoted exclusively to fixing the compensation of the officers in the several classes; section 189 being the one which fixes the compensation of officers in counties of the twenty-seventh class. Subdivision 15 of that section fixes the compensation of supervisors, and to this is tacked on the provision which we have above quoted, and which is wholly foreign to the section, and to the purpose for which, and for which alone, the legislature is authorized to classify counties. It is an attempt to classify counties upon a subject and for a purpose for and in relation to which the legislature is not authorized to make any classification. Except for the sole purpose of fixing the compensation of county officers in proportion to their duties, the duty of the legislature was and is to "establish a system of county governments which shall be uniform throughout the state." (Art. 11, sec. 4.) The attempt to make any such discrimination as that sought to be made in this case is not only in violation of the section of the constitution last cited, but also of article 1, section 11, and article 4, section 25, subdivisions 9 and 33. License taxes collected under provisions of the code or of an ordinance of the board of supervisors are moneys collected for the use of the county, and it is the duty of the collector to deposit them with the county treasurer. (Const., art. 11, sec. 16.) Under another and different law municipalities are authorized to impose and collect license taxes for municipal purposes. These, and these only, of the license tax collected in the county are to be paid into the municipal treasury.

Counsel for respondent has cited several authorities in support of the proposition that the disposition made by the legislative provision above quoted is not unconstitutional, for that it requires that the money, though paid into the municipal· treasury, shall be devoted to a purpose which is a county purpose, namely, the improvement of the streets in the municipality,—such streets

being public highways within the county.   It is unneces-
sary for us here to decide whether a county could appro-
priate moneys from its treasury for the improvement of
streets of a municipality within its borders or not.   The
authorities cited would seem to indicate, by a parity of
reasoning, that it could.   But that question is not now
before us.   What we are here considering is, whether or
not the legislature of the state can make such a disposi-
tion of county funds, and require that they be deposited,
not in the county treasury, but in a municipal treasury,
to be disbursed by a government other and different
from that for which and by whose authority they were
collected.   That it cannot do so we are satisfied.

The judgment of the court below was in favor of de-
fendant.   From the conclusion which we have reached,
it follows that the judgment must be reversed, and it is
so ordered.

BEATTY, C. J., SHARPSTEIN, J., and McFARLAND, J.,
concurred.