## I. C. THORESON, Respondent, v. STATE BOARD OF EXAMINERS, Appellant.

Money Paid under Chap. 76, Sess. Laws of 1892—Just Claim under Sec. 963, R. S. 1898. Provisions of Sec. 963, R. S. 1898 Mandatory. State Board of Examiners — Authority under Sec. 963, R. S. 1898. R. S. 1898, Sec. 963 — Just Claim — Failure of State Board of Examiners to Act—When Mandamus Will Lie.

1. *Money paid under Chap. 76, Sess. Laws, 1892—Just Claim under Sec. 963, R. S. 1898.*

     Money paid to a county by a lessee of lands under Chap. 76, Sess. Laws of 1892, is a just claim within the meaning of Sec. 963, R. S. 1898.

2. *Provisions of Sec. 963, R. S. 1898 Mandatory.*

     The provision of Sec. 963, R. S. 1898, directing the State Board of Examiners to receive, audit, and allow just claims for money paid under Chap. 76, Sess. Laws, 1892, is mandatory and not discretionary.

3. *State Board of Examiners—Authority under Sec. 963, R. S. 1898.*

     Under the provisions of Sec. 963, R. S. 1898, the State Board of Examiners has no authority to reject a portion of a claim for money paid in pursuance of Chap. 76, Sess. Laws, 1892.

4. *R. S. 1898, Sec. 963—Just Claim—Failure of State Board of Examiners to Act—When Mandamus Will Lie.*

     The appellant having admitted relator's claim to be just and to belong to the class mentioned in Sec. 963, R. S. 1898, it became the imperative duty of the Board to audit and allow the claim, and upon their failure mandamus will lie to compel performance of their duty.

     Where the statute requires an officer to perform a ministerial act, he will not be permitted, in a mandamus proceeding, to plead in justification of non-performance, that the act would violate the constitution.

(Decided March 13, 1899.)

Appeal from the Third District Court, Salt Lake County, Hon. A. N. Cherry, *Judge.*

Application of I. C. Thoresen for a writ of mandamus directing the State Board of Examiners to audit and allow in accordance with the requirements of Section 963 of the Revised Statutes, an unpaid balance ($38.96) of an amount paid by the relator's assignor on account of a lease of school lands, made in pursuance of Chapter 76 of the Session Laws of Utah, 1892.

From a judgment granting a peremptory writ defendant appeals. *Affirmed.* (Rehearing granted May 2, 1899.)

*Hon. A. C. Bishop, Attorney-General, and William A. Lee, Esq., Deputy Attorney-General,* for appellant.

Respondent bases his right for the writ of mandate prayed for upon the provisions of Section 963 of the Revised Statutes, which reads :

" The State Board of Examiners are hereby directed to receive, audit, and allow all just claims of persons who have paid moneys in pursuance of chapter seventy-six, of the session laws of the Territory of Utah, of eighteen hundred and ninety-two, in relation to the leasing of school lands, and the State Auditor is hereby directed to draw his warrant therefor on the State district school tax fund."

Appellant contends that the language employed by the legislature in this section, in defining the powers and duties of the Board in relation to these claims, necessarily vests it with a judicial and discretionary power, and that it can not audit and allow just claims presented to it without first sitting in judgment upon such claims, and hearing the necessary evidence and making a proper investigation to determine what claims come within this class.

"Audit, means to hear and examine; to pass upon and to adust; to examine and adjust an account or accounts." Am. and Eng. Ency. of Law (2d Ed.), Vol. 3, p. 2.

The word implies an exercise of judicial discretion. *In re Clark*, 5 Fed. Cases, No. 2810, 9 N. B. R., 67; *Morris* v. *People*, 3 Den. (N. Y.), 891; *Chase* v. *Saratoga County*, 33 Barb. (N. Y.), 603; *People* v. *St. Lawrence County*, 30 How. Pr. (N. Y. Sup. Ct.), 173; *People* v. *Barnes*, 114 N. Y., 317; *People* v. *Board of Apportionment*, etc., 52 N. Y., 227; *Territory* v. *Grant* 3 Wyo., 243; 21 Pac., 693; High on Ex. Legal Rem. (3d Ed.), Sec. 24; *Secretary* v. *Mc Garrahan*, 9 Wal., 312; *U. S.* v. *Seaman*, 17 How., 472; *U. S.* v. *Commissioner*, 5 Wal., 563; High on Ex. Legal Rem., Sec. 102; *Osborne* v. *Clarke*, 25 Pac. (Ariz.), 797; *State* v. *Boyd*, 36 Neb., 60.

Appellant contends that were this a case in which the court is clothed with appellate jurisdiction or jurisdiction to review and correct the judgment of the appellate board, in case it should find that judgment erroneous, applying the law to the facts in this case, an appellate court must necessarily reach the same conclusion that the Board reached. The decision of the Board in rejecting petitioner's claim, for that part of the money which was never turned over by the authorities of Cache County into the Territorial school fund, was a correct interpretation of Section 963.

For the purposes of this action, all of the parties thereto conceded, that while $103.90 was received by the county clerk of Cache County, from the petitioner's assignor, by and on account of said pretended lease, that the sum of $38.96 was retained by the county officers, or some of them, and only the sum of $64.94 was turned into the Territorial district school tax fund.

The Territorial supreme court in *Burrows* v. *Kimball*, *supra*, found the act under which the payment was made absolutely void, *ab initio*.

An unconstitutional act is not a law; it confers no right; it imposes no duty; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed. *Norton* v. *Shelby County*, 118 U. S., 425; *County Commissioners* v. *Kansas City R. Co.*, 47 Pac. (Kan.), 326.

Applying this case to the case at bar, all parties who paid money upon these leases to the several county treasurers, were making mere voluntary payments under which, and from which, they derived no right whatever, other than a right of action for money had and received against the individual so taking the money. These county officers were not acting in their capacity as officials; they were not bound to account for the money; they could not embezzle it as public funds, and the State or Territory, as it was then, had no right of action against them to recover it. Indeed, we might go further, and say that no person who came into possession of this money, whatever might have been his official position, was in any manner liable to the Territory for the same. Had the Territorial Treasurer failed to turn this money over to the school fund, in which it was subsequently found, he would not in any manner have been liable upon his bond, or otherwise, except as hereinbefore stated, to the individual from whom he received the same. It was not money that came into his possession by virtue of any law, but a mere voluntary payment made to him.

Such was the condition as it existed when Section 963 was passed by the legislature, but the legislature recognizing the fact that certain sums of money had been paid under a mistaken belief that there was a law authorizing

such payments, and that such money had been actually passed to the credit of the State district school tax fund, and considering that it was inequitable and unjust that the State district school tax fund should retain money that had been paid into it under a mistaken belief that there was a law authorizing it to be so paid into such fund, and, doubtless, also recognizing the further fact that the State could not be sued for money had and received, as an individual might be, enacted Section 963 for the purpose of authorizing the State Board of Examiners to return all such portions of this money as had actually found its way into the State district school tax fund. But it was never the intention of the legislature to invade that fund and authorize the State Board to pay claims out of the same-in excess of what the fund had actually received. Indeed, the legislature did not have the constitutional power to appropriate money out of this fund for such a purpose. But the legislature could, very properly, authorize the board to repay sums of money that had been erroneously collected and paid into this fund under this void statute, such money, in contemplation of law, never having become a part of this fund. And this is all that the legislature intended, by the provisions of Section 963, to authorize the board to do.

Where an officer receives money which he is not by law authorized to receive, such money is not received by him in his official capacity, and any duty which he may owe to pay the money is only that which rests upon any debtor or bailee. *Moore* v. *State* (Neb.), 74 N. W., 319; *San José* v. *Welch*, 65 Cal., 358; *San Luis Obispo Co.* v. *Farnum*, 108 Cal., 562; 41 Pac., 445; *People* v. *Pennock*, 60 N. Y., 421; *Orton* v. *City of Lincoln* (Ill. Sup.), 41 N. E., 159; *Lowe* v. *City of Guthrie* (Okla.), 44 Pac., 198; *Warswick* v. *State* (Tex. C. R. App.), 35 S. W., 386; *Fire Ins.* v. *State*, 9 Kan., 210.

See also Throop on Public Officers, Sec. 230, *et sequor.*

Sec. 7, Art. X, of the Constitution provides: "All public school funds shall be guaranteed by the State against loss or diversion."

We contend that this is an express limitation upon the legislative power to divert any portion of such fund to uses or purposes other than those for which the fund was created.

*N. V. Jones, Esq.,* for respondent.

The respondent contends:

That it is mandatory on the defendant to receive, audit, and allow and certify to the State Auditor said claims.

That the law vests in the defendant Board no judicial or discretionary power in relation to allowance or disallowance of said claims, provided,

That the Board finds that said claims are for moneys paid in pursuance of Chap. 76, Sess. Laws of 1892. That the duties of the Board are ministerial merely. That the only duties imposed upon the Board under this statute are to ascertain and determine whether or not the moneys upon which said claims are based, were paid as alleged in pursuance of said Chap. 76, Laws of 1892; and whether this plaintiff is the present owner and holder thereof; whenever it be ascertained that these claims are truthful, as for money so paid, it is their duty under the law to approve and certify the amount of such claims to the proper officer, and it has no authority to reject such claims, either in whole or in part.

The class of cases which most nearly resembles the one under discussion are those where plaintiffs sue for taxes illegally collected. And we claim that the same rules of law are applicable to those cases as to the one under discussion. And that the duty of the Board being ministerial, that mandamus is the proper remedy.

That when the Board fails to approve claims such as those of plaintiff that it should be compelled to approve and certify them by a writ of mandate. *People* v. *Otsego Co.*, 53 Barb., N. Y., 564; *People* v. *Board of Supervisors, Herkimer Co.*, 56 Barb., 452; *Am. and Eng. Ency. of Law*, Vol. 14, p. 192.


BASKIN, J.

The appeal in this case is from a judgment granting a peremptory writ of mandate, directing the State Board of Examiners to audit and allow, in accordance with the requirements of Sec. 963, of the Revised Statutes, an unpaid balance ($38.96) of an amount paid by the relator's assignor, on account of a lease of school lands, made in pursuance of Chap. 76, Sess. Laws of Utah, 1892.

Section 963 of the Revised Statutes is as follows:

"The State Board of Examiners are hereby directed to receive, audit, and allow all just claims of persons who have paid moneys in pursuance of Chapter seventy-six of the Sess. Laws of the Territory of Utah, of eighteen hundred and ninety-two, in relation to the leasing of school lands, and the State Auditor is hereby directed to draw his warrant therefor, on the State district school tax fund."

The facts found by the court were agreed to by the parties, and are as follows:

First.   Plaintiff's assignor paid to the County Clerk of Cache County, Utah, the total sum of $103.90, in pursuance of a lease entered into by virtue of Chap. 76 of the Session Laws of 1892, of the Territory of Utah, in relation to leasing school lands.

Second.   That the said defendant, the State Board of Examiners on or about the 15th day of December, 1897, audited and allowed plaintiff's claim to the amount

of $64.94, this being the total sum paid into the treasury of the Territory of Utah, or the State of Utah, by the County Clerk of Cache County upon the said lease, for the use and benefit of the Territorial school fund, or for any other purpose.

Third.  That said defendant Board have refused, and still refuse, to allow any other, or further sum than the sum of $64.94 so received by the said Territory, or State, for and on account of said lease.

Fourth.  It is further found that the sum of $103.90 was paid to the County Clerk of said Cache County by plaintiff's assignor on account of said lease ; that said County Clerk turned over to the Territorial Treasurer the sum of $64.94, and no more, which was the total sum that was ever paid into the Territorial treasury by said County Clerk on account of said lease."

The first objection made by appellant is that Section 963, of the Revised Statutes, vests the State Board of Examiners with a judicial and discretionary power, and that its action under the authority conferred by said section can not be controlled or directed by mandamus. There is no contention regarding the facts.

Counsel for the relator concedes the well-established rule that where discretionary powers are conferred by law upon an official body or officer, mandamus will lie to compel the exercise of the discretion, but not to direct the manner in which it shall be exercised ; but if the act to be performed is not discretionary then mandamus will lie to compel its performance.

If the provisions of said section make it the mandatory duty of the Board of Examiners to audit and allow the relator's claim, then the writ of mandamus was properly issued, but if the auditing and allowing of said claim is discretionary with the Board, then the writ was improvidently issued,

The Board is directed to receive, audit, and allow all just claims of persons who have paid money in pursuance of Chap. 76 of Sess. Laws of 1892, in relation to the leasing of school lands. What constitutes a just claim within the meaning of that term, as used in the statute, is clear. The act of 1892 provided for the leasing of the school lands, in the respective counties of the Territory, by the county court of each county.

The purpose of the act was clearly indicated by Section 17, which is as follows : "All money received under this act shall become a part of the Territorial school fund, and shall be paid into the Territorial treasury for that purpose." Section 18 provided that the lessee should give bonds to the county court leasing any of said lands, in double the amount of the annual rent to be paid. The obligation of such bond, provided for, was that the lessee and his sureties should well and truly pay the rent to the county court, according to the terms of the lease. A number of leases were made under the provisions of said act, and a considerable amount of money was paid by the lessees.

This court, in the case of *Burrows* v. *Kimball*, 11 Utah, 149, held said act null and void. All of the leases which have been made in pursuance of said act, on account of the invalidity of the act were also void and of no utility to the lessees. For the purpose of refunding to them the money paid in pursuance of their void leases, under this illegal act of the legislature Section 963 of the Revised Statutes was passed.

In the light of these facts, there can be no doubt but that any amount paid by a lessee to the county, on a lease made in pursuance of that void act of the legislature, is a just claim within the meaning of those terms as used in Section 963 of the Revised Statutes, and that the provision of said section directing the Board to receive, audit,

and allow all claims for such payments, is mandatory and not discretionary with the Board.

It is contended by appellant's counsel "that the Board can not audit and allow just claims presented to it without first sitting in judgment upon such claims and hearing the necessary evidence and making a proper investigation to determine whether claims come within this class." This states the matter too broadly. The only investigation which the Board is authorized to make is whether the money claimed was paid in pursuance of the act of 1892. The Board had no authority to reject a portion of the respondent's claim on the ground that none of the money paid, except the amount of the claim audited and allowed, ever reached the Territorial treasury, for no such condition as that is contained in Section 963 of the Revised Statutes. Its terms are plain, explicit, and unambiguous. They are susceptible of but one interpretation, and that is : The Board shall receive, audit, and allow all money paid in pursuance of the act of 1892. The payments under that act were to be made to the county courts and not to the Territorial Treasurer.

The facts admitted by the appellant and found by the court show that the money claimed was paid by the relator's assignor in pursuance of the act of 1892. The money so paid, was, as has already been shown, the money which the legislature intended should be refunded, and therefore any claim for money so paid, is a just claim. The claim of the relator was not rejected because it was not paid in pursuance of the act of 1892, but because it had not reached the Territorial treasury.

The appellant having admitted the facts which show that the relator's claim is a just one, and belongs to the class, the payment of which the legislature, in Section 963 of the Revised Statutes, intended to provide for, it became

and was the imperative duty of the board to audit and allow said claim; having failed to perform this duty, the writ of mandamus was properly issued.

The views which we have expressed are fully sustained by the following authorities : *People ex rel.* v. *Supervisors,* 51 N. Y., 401, 407 ; *Harwood* v. *Quinby,* 44 Iowa, 393 ; *People ex rel.* v. *Supervisors,* 70 N. Y., 235 ; *People ex rel.* v. *Supervisors,* 51 N. Y., 445; High on Extra. Rem., 146; *Boynton* v. *Blaine,* 139 U. S., 319 ; Black's Constitutional Law, 82 and cases cited ; *Tremont School Dist.* v. *Clark,* 33 Me., 482 ; *Delaney* v. *Goddin,* 12 Grat., 266–276 ; *Randolph* v. *Stalmaker,* 13 Grat., 523, 525 ; Cooley on Taxation, p. 743 n. 7, and p. 729, 730, n. 1.

The syllabus in the case in 51 N. Y., 401, contains a terse statement of the principle decided by these cases, and which we think is conclusive on the point of contention now under consideration in the case at bar, and is as follows :

"The provision of the act providing for relief against illegal taxation (Sec. 1, Chap. 938, Laws of 1867), authorizing and empowering the boards of supervisors of certain counties therein named to hear and determine claims for illegal assessments upon United States securities and to repay the amount collected upon such assessments, is mandatory. Upon the presentation of a claim thereunder, the only questions to be determined by the Board, and in reference to which it has any discretion, are whether the claimant has such a claim, and if so, the amount thereof. When the fact of the existence of the claim is undisputed, the Board has no authority to reject it as illegal, and it can be compelled by mandamus to exercise its discretion upon the facts and the amounts of the allowance."

The principle decided in this case is announced in the

text of Cooley on Taxation (see pages and notes of that work before referred to), and this case is referred to as supporting the text.

The case of *Delaney* v. *Goddin, supra,* arose under a statute of Virginia regulating tax sales.   The 14th section provided that " the purchaser of a part of any tract so sold and not redeemed within two years, shall have the quantity surveyed, purchased and laid off, the survey to commence on either of the lines of the tract at the option of the purchaser, so as not to include the improvements on the same (if it can be avoided), and to be in one body, the length whereof shall not be more than double the breadth, when that is practicable.   It further provides that a plat and certificate of the survey shall be returned to the court of the county ; and if the court, upon examination thereof, find it to be correctly made in conformity with said fourteenth section, it shall order the same to be recorded."

And the fifteenth section provides that "when an entire tract of land if so sold, and not redeemed within the two years, the purchaser shall have a report made by the surveyor of the county to the court thereof, specifying the metes and bounds of the land sold, and the names of the owners of the adjoining tracts ; and giving such further description of the land sold as will identify the same ; and the county court, unless it see some objection to such report, shall order the same to be recorded."

A survey was made by a purchaser at a tax sale, and a return made thereof to the county court.   The provisions of the statute had in all respects been complied with. The court refused to allow said survey to be recorded, not, however, on the ground that the provisions of the statute, in making it, had not been followed, but on other grounds. The court was, by mandamus, compelled to record the

said survey.   The appellate court holding that the duty of
the county court to record the survey under the circum-
stances disclosed, was not judicial, but purely ministerial.

In the case of *Randolph* v. *Stalmaker*, *supra*, the same
question was decided, under the same state of facts as
existed in the case just mentioned, and the court say:
"The principal questions presented by.the record have
been settled by the decision of this court in the case of
*Delaney* v. *Goddin*, 12 Grat., 266.   That case was
elaborately argued and maturely considered; and all the
judges were of opinion that the authority of the county
court was limited to the inquiry whether the report of the
surveyor is in conformity with the provisions of the sec-
tion under which it is made; and if free from objection
in this respect, it becomes the imperative duty of the court
to order the report to be recorded.   And a majority of the
court held, that in passing on such question the county
court is vested with no judicial power, but acts in a
capacity purely ministerial; and that an error in refusing
to order the report of the surveyor to be recorded can
only be corrected by mandamus."

In the case at bar the Board did not dispute the fact
that the sum rejected had been paid in pursuance of the
act of 1892, but rejected the claim on constitutional
grounds.   The ground upon which the claim of relator
was rejected is that its allowance would violate Section 7,
Article 10, of the Constitution, and constitutes the ground
of the second objection urged by appellant's counsel.

The decision of such a question by the Board was the
exercise of a judicial function.   No such judicial power
was conferred upon it.   Its discretion and duty in the
premises was confined to the ascertainment of what, if
any, amount the relator's assignor had paid in pursuance
of the act of 1892.   The amount so paid the Board has

admitted in the agreed statement of facts. It had no greater personal interest in the matter than any other citizen of the State. The parties alone affected are the State and the beneficiaries mentioned in Sec. 963 of the Revised Statutes.

To allow mere ministerial officers, who have no direct personal interest in the matter, to refuse to perform an act clearly pointed out and made their official duty, by a statute, on the ground that the performance of the act would violate the constitution, would be establishing a very dangerous precedent, and one not warranted by the authorities. It would be deciding a constitutional question, affecting the right of third parties, at the instance of officers whose duties are merely ministerial, and who have no direct interest in the question, and can not in any event be made responsible. We are of the opinion that this ground of objection furnishes no excuse for the failure of the Board to perform a plain ministerial duty prescribed by the governor and legislative assembly of the State, and that we are not authorized to pass upon the constitutional question so raised in a proceeding by mandamus. This view of the case is supported by the following authorities: *The People ex rel.* v. *Salomon*, 54 Ill., 39–45; *Smyth* v. *Titcomb*, 31 Me., 273, 285; *Tremont School District* v. *Clark*, 33 *Ibid.*, 482; *Maxwell* v. *Burton*, 2 Utah, 595–599; *State ex rel.* v. *Douglas County*, 26 N. W., 315 (Neb.); *Wright* v. *Kelley*, 43 Pac. Rep., 565, 566, 567, (Idaho); *Waldron* v. *Lee*, 5 Pick., 323–327, 328; *State ex rel.* v. *Buchanan*, 24 W. Va., 363–384; *People ex rel.* v. *Stephens*, 2 Abotts Prac. (N. S.), 348–354; *Davis* v. *Sup. Court*, 63 Cal., 582.

In the case of the *People ex rel.* v. *Salomon*, *supra*, the court say: "The law under which this additional tax was imposed had passed the legislature under all the forms of

the constitution, and had received executive sanction, and became, by its own intrinsic force, the law to you, to every other public officer in the State, and to all the people. You assumed the responsibility of declaring the law unconstitutional, and at once determined to disregard it, to set up your own judgment as superior to the expressed will of the legislature, asserting, in fact, an entire independence thereof. This is the first case in our judicial history in which a ministerial officer has taken upon himself the responsibility of nullifying an act of the legislature for the better collection of the public revenue, of arresting its operation, of disobeying its behests, and placing his own judgment above legislative authority expressed in the form of law.

To the law every man owes homage, 'the very least as needing its care, the greatest as not exempted from its power.' To allow a ministerial officer to decide upon the validity of a law, would be subversive of the great objects and purposes of government, for if one such officer may assume infallibility, all other like officers may do the same, and thus an end be put to civil government, one of whose cardinal principles is subjection to the laws.

Being a ministerial officer, the path of duty was plain before you. You strayed from it and became a volunteer in the effort to arrest the law, and it was successful. Had the property owners, who were subjected to this additional tax, considered the law unconstitutional, they could, in the proper courts, have tested the question, and it was their undoubted right so to do. Your only duty was obedience. The collected will of the whole people was embodied in that law. A decent respect to them required that all their servants should obey it."

In the case of *Smith* v. *Mitchell*, *supra*, the court say: "A public officer intrusted with the collection and dis-

bursement of revenue, in any of the departments of the government, has no right to refuse to perform his ministerial duties, prescribed by law, because he may apprehend that others may be injuriously affected by it, or that the law may, possibly, be unconstitutional. He is not responsible for the law, or for the possible wrongs which may result from its execution. * * * Public policy, as well as public necessity and justice, require prompt and efficient action from such officers. * * * The consequences would be ruinous if they could withhold their services and the necessary means either from timidity, or captiousness, until all questions of law which might arise in the performance of their official duties, should first be judicially settled."

In the case of Tremont School District, *supra*, the court say:

"An officer appointed to collect the public revenue must, *ex necessitate rei*, obey his warrant, and he will be protected in so doing. He holds in his hands the sinews of government, and neither his fears that individuals may be injured, nor his doubts about the validity of the anterior proceedings, will excuse him. If individuals are injured, they have their remedy at law, or they may see fit to waive any injury they have received. The collector has no judicial power. He is only to know whether his warrant proceeds from competent authority. If so, he must fulfill it as he is commanded."

In *Waldron* v. *Lee*, *supra*, the court say:

"No more proper case can arise for an application like the present, than where those intrusted with the collection of the revenue of the country refuse to perform their duty; for without a vigorous compulsory power upon them great public mischief might ensue. The State treasury would be embarrassed, if those who are to collect its revenue

19 Utah—3

may not by summary process be compelled to do their duty. So with counties, towns, and divisions of towns, authorized by law to tax the members of these several communities. * * *

The Treasurer is a mere ministerial officer; he has no authority to pause in the execution of his duty, on the suggestion of errors or mistakes in the proceedings. If the facts upon which he is to act are properly certified to him, he has no discretion, but is obliged to issue his warrant. Whether the tax be legal or illegal, whether duly assessed or not, are not subjects for him to inquire about. If there be a tax, an assessment, a warrant to the collector, all certified to him by assessors duly qualified to act, his duty is clear, and he is peremptorily commanded by the law to discharge it."

In the case of *Maxwell* v. *Burton. supra,* the court say:

"We find that there is a law on the statute books in reference to legislation, compelling the respondent to do what we are now asked to compel him to undo. We can not, for the purpose of this proceeding, inquire into its validity."

In *Wright* v. *Kelley, supra,* the court say:

"Mandamus is an appropriate remedy to be employed against delinquent tax collectors to enforce the performance of their duties; nor, in such cases, can the respondent, as a ministerial officer, object that the act of the legislature authorizing the tax is unconstitutional, since it is not within the province of such officers to determine the constitutionality of laws. * * *

From the cases here cited, and a large number cited therein, and which it is not necessary here to quote, it is apparent that mandamus is not the proper proceeding in which to test the constitutionality of an act of the legislature."

The rule which we have announced in this case is sustained both by reason and the authorities.

The judgment of the lower court is affirmed, with costs.

Bartch, C. J., and McCarty, Dist. J., concur