THE STATE OF UTAH ex relatione J. A. WRIGHT, Appellant, v. JOSEPH STANDFORD et al., Respondents.

No. 1313.   (66 Pac. 1061.)

1. Constitutional Law: Counties: Local Self-Government.
     It is the intention of the organic law, as gathered from the various provisions thereof, that local self-government shall be had by the people of each county.

2. Same: Taxation: Taxation by State: "Corporate Authorities" (Const. Art. 13, sec. 5): Meaning of Term.
     Constitution, article 13, section 5, prohibits the Legislature from imposing taxes for the purposes of any county, and vests the right to collect and assess them in the corporate authorities of the county. Revised Statutes 1898, section 1176, as amended by Laws 1899, chapter 47, provides that the state board of horticulture, appointed by the Governor, shall nominate, to the

State v. Standford.

board of county commissioners of counties where fruit trees are growing to the number of 5,000 or more, three persons suitable to act as fruit tree inspectors; that one of such persons shall be selected by the commissioners; that the inspector shall perform his services under the direction of the state board; and that in counties having a population of over 20,000 the inspector may appoint as many deputies as he deems necessary, the compensation of the inspector and his deputies to be paid monthly by each county. *Held*, that the term "corporate authorities," as used in the Constitution, means municipal officers directly elected by the population to be taxed, or appointed in some mode to which they have given their assent; and hence the statute is violative of the constitutional provision.

3. **Same: Imposing Burden on County: Statutes: Uniformity of Operation.**

Inasmuch as under the statute, counties having 20,000 or more population are required to have an inspector and as many deputies as the inspector may choose, and counties containing less than 5,000 fruit trees are not required to have an inspector, the law is violative of Constitution, article 1, section 24, providing that all laws of a general nature shall have uniform operation throughout the State. (BASKIN, J., dissenting.)

(Decided December 7, 1901.)

Appeal from the Second District Court, Weber County.—
*Hon. H. H. Rolapp,* Judge.

Application for a peremptory writ of mandate to compel the defendants, as the board of county commissioners of Weber county, to select from a list of three names submitted by J. A. Wright, the relator, as the member of the state board of horticulture for the district in which Weber county is located, the name of one of such persons to act as county fruit tree inspector. From a judgment (refusing the writ) in favor of the defendants, the relator appealed.

AFFIRMED.

*Hon. M. A. Breeden,* Attorney-General, and *A. B. Hayes, Esq.,* District Attorney, Second District, for appellant.

Counties are mere political subdivisions of the State, organized for the convenient exercising of the political, executive, and judicial powers of the State. They perform public and not private functions. Harris v. Supervisors, 105 Ill. 451. They are governments of enumerated powers, acting by a delegated authority (Cooley on Const. Lim., 231), which may be enlarged or diminished, at the discretion of the legislative power of the state (Id., p. 232); restraints upon which must be found in the Constitution of the State. Id., 233.

This brings us to the question as to what are the restraints, express or implied, imposed by the Constitution upon the legislative department of the State respecting its control of the political subdivisions of the State.

Section 1, article 11 of the Constitution provides that "the several counties of the Territory of Utah, existing at the time of the adoption of this Constitution, are hereby recognized as legal subdivisions of this State and they shall so continue until changed by law in pursuance of this article.

"Section 4. The Legislature shall establish a system of county government, which shall be uniform throughout the State, and by general laws shall provide for precinct and town organizations.

"Sec. 5. Corporations for municipal purposes shall not be created by special laws; the Legislature, by general laws, shall provide for the incorporation, organization, and classification of cities and towns in proportion to population; which laws may be altered, amended or repealed."

The power or right of local self-government is not expressly conferred by the Constitution. It is recognized, however, in the above requirements, and in certain restraints placed upon the legislative department of the State, found in other parts of the Constitution.

Section 5, article 13, provides that the Legislature shall not impose taxes for the purposes of any county, city, town,

or other municipal corporation, but may by law vest in the corporate authorities thereof, respectively, the power to assess and collect taxes for all purposes of such corporation.

And section 29, article 6, prohibits the Legislature from delegating to any special commission, private corporation, or association, any power to make, supervise, or interfere with any municipal improvement, money, property, or effects, whether held in trust or otherwise, to levy taxes, to select a capital site, or to perform any municipal functions; and others. But the requirement that the Legislature shall establish a uniform system of county government, and by general laws provide for the incorporation, organization, and classification of cities and towns, must be understood as referring to organizations like those in existence throughout the United States, in their general features at least.     Ex parte Wall, 48 Cal. 318; Cooley Const. Lim. (4 Ed.), 228.

As to all matters of public concern, involving State interests affecting the people and property of the State generally, the legislative department of the State is supreme. Cooley on Taxation (2 Ed.), p. 688; People v. Com. Council of Detroit, 28 Mich. 288, 233; Supervisors v. the People, 110 Ill. 511; Harris v. Supervisors, 105 Ill. 451; Marion Co. v. Lear, 108 Ill. 343.

The objects of the act, of which the section complained of is an amendment, is as wide as the State itself.    The expense of executing the provisions of the act is apportioned among the several counties of the State and the State.    The State is divided into horticultural districts, embracing several counties in each.    A new civil division of the State was thereby created, from each of which a member of the State board was appointed, and in which is vested the right to nominate to the board of county commissioners of each county the names of three practical horticulturists, one of whom is to be appointed by the commissioners as the county inspector. The county inspector is authorized to appoint as many deputies

as in the judgment of the inspector and members of the State board may be necessary to carry out the provisions of the title; and the whole is a lawful exercise of the police power of the State over matters of State concern. People v. Pinckney, 32 N. Y. 393; State ex rel. Cox v. Board of Education, 21 Utah 409.

It was competent for the Legislature to provide the manner of appointing the county inspector and his deputies that it did, there being no restriction placed upon the Legislature in this respect. People v. Osborne (Colo.), 4 Pac. 1074; Wenner v. Smith, 4 Utah 238; State ex rel. Williams v. County Com'rs, 9 Pac. 123; Davis v. State, 61 Am. Dec. 331.

*George Halverson, Esq.,* for respondents.

We contend that section 1176, as amended, is unconstitutional for the following reasons:

1. It interferes with the right of local self-government, which is impliedly if not expressly recognized by the Constitution:

(a) By vesting the power of appointment in other than the local authorities of the county.

(b) By taking the administrative affairs of the county out of its control, and placing them under the control of the State, that is to say, it calls for the regulation by State officers of duties belonging solely to the county officers.

2. It confers power to tax upon others than the "corporate authorities" of the county, to-wit, upon the state board of horticulture, and the county fruit tree inspector.

3. It imposes the expense of enforcing a state regulation upon the county.

4. It attempts by local or special law to regulate county affairs.

5. It violates the mandate of the Constitution requiring the establishment of a uniform system of county government.

It is said in Cooley's Constitutional Limitations: "Local self-government, having always been a part of the English and American systems, we shall look for its recognition in any such instrument, and if not expressly recognized, it is still to be understood that all these instruments are framed with its present existence and anticipated continuance in view." Constitutional Limitations, 35.

Section 1176, as amended by laws of 1899, takes away from the people the right of choosing their own officers, directly or through agents of their own selection. The choice of a person to fill an office constitutes the essence of the appointment, and the selection must be the discretionary act of the officer clothed with the power of appointment. 19 Amer. and Eng. Ency.; 423, 417, 418; People v. Mosher (N. Y.), 57 N. E. 91; People v. Hurlbut, 24 Mich. 44; State v. Hyde, 121 Ind. 20; Rathbone v. Wirth, 45 N. E. 17; People v. Angle (N. Y.), 17 N. E. 416; Evansville v. State, 118 Ind. 426; People v. Detroit, 28 Mich. 228; State ex rel. Hamilton v. Krez (Wis.), 59 N. W. 593; People v. Bull, 46 N. Y. 57; People v. Kinney, 52 N. Y. 374; Menges v. Albany, 56 N. Y. 374; Atty.-Gen. ex rel. v. Trombly, 50 N. W. 746.

While section 1176 of the Revised Statutes, as amended by chapter 47 of the Laws of 1899, does not, in terms, grant the taxing power to the members of the state board of horticulture and the county inspector, it does provide that the county inspector shall appoint as many deputy inspectors as the members of the state board of horticulture may judge necessary to carry out the provisions of that title. It will be seen that it gives the state board of horticulture the power to appoint as many deputy inspectors as it may see fit, and that it imposes the expense of their payment upon the county. It is familiar doctrine that the "power to create a debt is the power to tax."

This section confers upon the state board of horticulture

the power to create a debt—the power to tax—whereas the Constitution authorizes the Legislature to vest the power of taxation in the corporate authorities of the county (section 5, article 13). "By the term 'corporate authorities' must be understood those municipal officers who are either directly elected by the population to be taxed, or appointed in some mode to which they have given their assent." Hessler v. Drainage Com'r., 53 Ill. 113; Lovingston v. Wider, 53 Ill. 305; People v. Mayor, etc., Chicago, 51 Ill. 31; People v. Salomon, 51 Ill. 31; Harward v. St. Clair Drainage Co., 51 Ill. 130; People v. Chicago, 51 Ill. 58; Wetherell v. Devine, 116 Ill. 631; Elmwood v. Marcy, 92 U. S. 289; Helena Consolidated Water Co. v. Steele (Mont.), 49 Pac. Rep. 382; McCabe v. Carpenter, 36 Pac. Rep. 836; Rathbone v. Wirth, 150 N. Y. 459; 45 N. E. 15; Davies v. Board of Sup'rs., 50 N. W. 862; People v. Mosher, 57 N. E. 91; Baker v. Seattle (Wash.), 27 Pac. Rep. 465.

While the statute is in form general, it is, in effect, local. It is upon a subject of a general nature, to-wit, quarantine, and should be provided for by general law. "In all cases where a general law can be made applicable, no special law shall be enacted" (subdivision 18, section 26, article 6). "All laws of general nature shall have a uniform operation" (section 24, article 1). "The Legislature is prohibited from enacting any private or special laws in the following cases: . . . 11. Regulating county and township affairs" (section 26, article 6). Welsh v. Bramlet, 33 Pac. Rep. 68; see Const., subdiv. 11, of sec. 26, art. 6; also, sec. 24, art. 1; Darcy v. Mayor, etc. San Jose, 38 Pac. Rep. 501; Hickson v. Burson (Ohio), 43 N. E. 1000; San Luis Obispo v. Graves (Cal.), 23 Pac. Rep. 1032.

STATEMENT OF FACTS.

This is an application for a peremptory writ of mandate to compel the defendants, as the board of county commissioners

of Weber county, to select from the list of three names submitted by J. A. Wright, the relator, as the member of the state board of horticulture for the district in which Weber county is located, the name of one of such persons to act as county fruit tree inspector. An alternative writ was issued in the first instance, and the defendants, by their attorney, moved to quash the writ, and also interposed a demurrer to the petition. It appears from the affidavit and writ that J. A. Wright, the relator, on behalf of the State of Utah, is secretary of the state board of horticulture, and a member of the said board of horticulture for the First horticultural district of the State of Utah, in which Weber county is located, and that there were, on the first Monday in April, 1901, and had been for a long time prior thereto, more than 5,000 fruit trees growing in said county; that Weber county has a population of more than 20,000 inhabitants; that on or before the first Monday in April, 1901, said relator nominated to the board of county commissioners of Weber county three persons who were practical horticulturists, as prescribed by the statute; but that said board of county commissioners refused to select from the names so nominated one person to act as county fruit tree inspector, as required in chapter 47, Laws Utah, 1899. The court below sustained defendants' demurrer and motion to quash, and thereupon judgment was entered in favor of the defendants, from which the plaintiff appeals.

MINER, C. J., after stating the facts, delivered the opinion of the court.

The respondents contend that section 1176, Revised Statutes, 1898, as amended by chapter 47, Laws 1899, is enacted in violation of the Constitution of this State, and claims that it interferes with local self-government, which is impliedly, if not expressly, recognized by the Constitution, by vesting the power of appointment in other than the local authorities of the county, by taking the administrative affairs

of the county out of its control, and placing them under the control of the State. It confers power to tax upon others than the corporate authorities of the county. It imposes the expense of enforcing a state regulation upon the county. It attempts by local or special law to regulate county affairs. It violates the mandate of the Constitution requiring the establishment of a uniform system of county government. Section 1168, Revised Statutes 1898, provides that the Governor shall appoint a state board of horticulture, to consist of three persons, to represent, respectively, three districts created by the statute. By section 1176 of that act, as amended by chapter 47, Laws 1899, it is made the duty of the member of the state board of horticulture for the district in which the county is situated to nominate to the board of county commissioners of the respective counties, where fruit trees are growing to the number of 5,000 or more, three persons suitable to act as county fruit tree inspectors, and it is made the duty of the county commissioners to select from the names thus nominated one person to act as county inspector, and the person so selected from the three names must be a practical horticulturist. It is also made the duty of the inspector to perform his services under the direction of the member of the state board of horticulture for the district in which he is appointed. It is also provided that in counties having a population of 20,000, or greater, there shall be appointed by the county inspector as many deputy inspectors as in the judgment of the inspector and the members of the state board of horticulture may be necessary to carry out the provisions of the act. Such inspector and deputy inspectors shall be employed for such time as the board directs. The compensation of the inspector is fixed at three dollars per day, and of each deputy inspector at two dollars per day such sums to be paid monthly by each county out of its salary fund.

An examination into its early history will show the existence of a system of territorial subdivisions of the State into

counties when the present Constitution was adopted. At this early date the system of local self-government existed under the general laws of the Territory, and there is no provision in the Constitution which can be construed as impairing that right. On the contrary, every provision of it relating to that subject manifests a purpose to preserve such right unimpaired to the people, and to restrict any interference therewith. While the implied restrictions upon the power of the Legislature with reference to local self-government are not defined with that particularity and incisiveness they could have been, yet they are imperative in their character, and when the courts find a case presented for consideration which is clearly within such provisions it has no alternative but to conform to authority. The Constitution was doubtless framed and adopted with a purpose to protect the local self-governments which had existed of a practically uniform character from the early settlement of the country, since which they have remained undisturbed, the continued existence of which is therein assumed and from which the liberty of the people springs and depends. Judge Cooley, in his work on Statutory Limitations (page 35), says: "Local self-government having always been a part of the English and American systems, we shall look for its recognition in any such instrument, and, if not expressly recognized, it is still to be understood that all these instruments are framed with its present existence and anticipated continuance in view." The same author, on page 281 (6 Ed.), speaking on the same general subject, says: "One undoubted right of the people is to choose, directly or indirectly, under the forms and restrictions prescribed by the Legislature, for reasons of general state policy, the officers of local administration and the board that is to make the local laws. This is a right which of late has sometimes been encroached upon under various plausible pretenses, but almost always with the result which reasonable men should have anticipated from the experiment of a body at a distance attempt-

ing to govern a local community of whose affairs or needs they could know but little, except as they should derive information from sources likely to have interested reasons for misleading." People v. Albertson, 55 N. Y. 50; People v. Lynch, 51 Cal. 31, 21 Am. Rep. 677; People v. Hurlbut, 24 Mich. 44, 9 Am. Rep. 103.

An examination of the Constitution will show that at least by implication local self-government to the people of each county is intended to be imposed and recognized. Section 4, article 11, of the Constitution, provides for the establishment of a system of county governments, which shall be uniform throughout the State. Section 1, article 11, recognizes the existence of the several counties as legal subdivisions of the State. Section 5, article 13, prohibits the Legislature from imposing taxes for the purpose of any county, but may vest the corporate authorities thereof with power to assess and collect taxes for the purpose of such corporation. Section 3, article 14, prohibits any county from creating any indebtedness in excess of the taxes for the current year without a vote of the electors thereof. Section 6, article 14, prohibits the State from assuming the debt of any county. Section 3, article 11, prohibits the Legislature from changing county lines without a vote of the electors of the counties interested. These provisions of the organic act, when read in the light of the conditions existing at the time of its adoption, when a system of county governments existed, have a more extended meaning than mere geographical subdivisions of the State. Constitutions are not to be interpreted alone by words abstractly considered, but by their words read in the light of the conditions and necessities under which the provisions originated, and in view of the purposes sought to be attained and secured. Dill. Mun. Corp., sec. 3a. As has been seen, the Constitution implies a right of local self-government to each county, and a right to establish a system of county government is expressly recognized and enjoined. The

State v. Standford.

power is given to create the county government, not to administer to such a system when created.   The right of the Legislature was to provide for and put in action, not to run and operate, the machinery of the local government to the disfranchisement of the people.   People v. Hurlbut, 24 Mich. 44, 9 Am. Rep. 103.   When the county government is established separate from the state, each is compelled to bear its own burdens, and not assume those of the other.   The Legislature is forbidden to impose taxes for county purposes, as is the county for state purposes, and the State is not authorized to impose taxes for other than state purposes.   Section 5, article 13, Const.; In re House Bill No. 270 (Colo. Sup.), 21 Pac. 476.

Under the statute, the Governor appoints the state board of horticulture.   Section 1176, as amended, empowers the member of the state board for the district in which a county is located having 5,000 or more fruit trees, to nominate to the board of county commissioners of such county three persons suitable to act as county fruit tree inspectors, one of whom it is made the imperative duty of the county commissioners to select to act as county fruit tree inspector. It makes no difference whether the three named are competent or not.   The county commissioners must choose one of those named by the member of the board to act, and in counties having a population of 20,000 or more, such as Weber, the county inspector must appoint as many deputies as in the judgment of such inspector and the members of the state board of horticulture may be necessary, and their term of office is fixed at two years.   The compensation of each county inspector is fixed at three dollars per day, and each deputy at two dollars per day, to be paid by the county. Under the act the inspector, with the advice of the board, may appoint as he sees fit, and impose the expenses thereof upon the county, thus placing in the inspector and board the administration of the affairs of the county with power to create

a debt for the county to pay, and indirectly the power to tax the county for the payment of that debt, thus taking away from such county a right to choose or appoint its own officers, and compel it to levy and collect taxes with which to pay such officers their salaries fixed by the act, whereas section 5, article 13, Constitution, prohibits the Legislature from imposing taxes for the purposes of any county, and vests that right to assess and collect them in the corporate authorities of the county. The terms of the Constitution are made mandatory and prohibitory, unless expressly declared to be otherwise. Section 26, article 1. By the term "corporate authorities" must be intended those municipal officers who are either directly elected by the population to be taxed or appointed in some mode to which they have given their assent. Hessler v. Commissioners, 53 Ill. 113. Under the statute the inspector and his deputies are merely agents in the hands of the state board, and perform their duties under their direction, and not under the authority of the county. They determine the number of deputies, and in that way have power to fix the burden of taxation upon each county for their services. If the inspector and board think proper, any number of deputies may be appointed at the compensation named, and the expense fastened upon the county without its consent. The county commissioners have no supervisory control over the inspectors or the deputies, and are not even able to determine the time or character of their employment, and in no sense can they be called county officers. Under this statute the county is compelled to audit and pay the monthly salaries of the inspector and deputies, without any previous means of knowledge as to the amount thereof, with the power in the board and inspector to increase the expenses at any time, notwithstanding the Constitution prohibits the Legislature from imposing taxes for county purposes, but may invest in the corporate authorities thereof the power to assess and collect them for the purposes of the corporation. Under the Constitution

the State has no power to make a disposition of county funds, and require that they be appropriated for other and different purposes than those for which by authority of the county they were collected. San Luis Obispo Co. v. Graves, 84 Cal. 71, 23 Pac. 1032. In our opinion section 5, article 13, of the Constitution, not only limits local or county taxation to local county purposes, but it was also intended as a limitation upon the power of the Legislature to grant the right or impose the duty of creating a debt or levying a tax to any person or body other than the corporate authorities of the county. Nor can the State compel a county to incur a debt or to levy a tax for the purpose named in the act without its consent. People v. Mayor, etc., 51 Ill. 31; Harward v. Drainage Co., 51 Ill. 130; People v. Hurlbut, 24 Mich. 44, 9 Am. Rep. 103; Cooley, Const. Lim. (6 Ed.), 47-281; San Luis Obispo Co. v. Graves, 84 Cal. 71, 23 Pac. 1032; Welsh v. Bramlet (Cal.), 33 Pac. 68.

2. Section 4, article 11, Constitution, provides that the Legislature shall establish a system of county government which shall be uniform throughout the State; and by subdivision 12, section 26, article 6, it is provided that the Legislature is prohibited from enacting any private or special law regulating county or township affairs. By section 24, article 1, Constitution, it is provided that all laws of a general nature shall have uniform operation. The first part of the section in question applies to counties having 5,000 or more growing fruit trees. Such county must have an inspector approved by the board, to be paid a salary from the county funds; but counties having 20,000 or more population are required to have one inspector, and as many deputy inspectors as the board and county inspector may choose, all of whom are to be paid by the county, while other counties having less than 5,000 growing fruit trees are not entitled to an inspector, or to any deputy inspector, nor would they, if

24 Utah—11

they had 30,000 population. Neither clause in the act applies to counties having less than 5,000 growing fruit trees, no matter what the population. The board has no power to name the number of deputies in a county having less than 20,000 population, even if it has 5,000 fruit trees. The act was doubtless intended to apply, as it does, to certain particular counties, to the exclusion of others, and to the appointment by the board of special officers in some counties, whose salary must be paid by such county from taxes raised therein. The act is therefore not uniform throughout the State, and does not tend to establish a uniform system of county government under the supervision of the county authorities, as required by the Constitution. A uniform system of county government, within the meaning of the Constitution, is a system or plan of government of the several counties in the State which is uniform, so that its several parts shall be applicable to each county. The State Legislature is forbidden to pass any private or special laws regulating county affairs. The laws enacted must be uniform generally, and applicable to all of the counties throughout the State. In Welsh v. Bramlet, supra, it is said: "Whenever it attempts to enact a law for one or more of the counties of the State upon subjects that it is directed to provide for by general laws, or which are to form part of a uniform system for the whole State, whether such counties are designated directly by name, or by reference to a class into which they have been placed for other subjects of legislation, it infringes these provisions of the Constitution. We must take judicial knowledge that there is only one county in the State whose population places it in the eighth class, and, if an act is passed by the Legislature that is applicable to only one county in the State, it does not cease to be local by reason of the fact that it purports to be applicable to a class of counties which the Legislature is not authorized to create for the purpose of such legislation, and of which that county constitutes the only member." Darcy v. City of San Jose

(Cal.) 38 Pac. 501; Hixson v. Burson (Ohio), 43 N. E. 1000; San Luis Obispo Co. v. Graves (Cal.), 23 Pac. 1032; Cooley, Const. Lim., p. 58. We are of the opinion that section 1176, Revised Statutes 1898, as amended by chapter 47, p. 71, Laws 1899, is for the reasons stated invalid.

The able counsel for both of the respective parties in this case express in their briefs a desire to have the case passed upon on the merits, and therefore both join in the request that the question as to whether the county commissioners are or are not ministerial officers and authorized to bring this action shall not be passed upon, and each expressly waive that question. Under such circumstances we refrain from discussing it. Similar questions were passed upon by this court in Thoreson v. Board, 19 Utah 18, 57 Pac. 175, and the Gilbert Case, 11 Utah 378, 40 Pac. 264.

The order of the district court, in denying the petition for a peremptory writ of mandate, and in dismissing the petition, is affirmed, with costs.

BARTCH, J., concurs.

BASKIN, J. (dissenting).—The statute required the board of county commissioners to select one of three persons nominated by the board of horticulture to act as county fruit tree inspector. The duty of the board under the statute to make such selection was purely ministerial, and therefore it can not plead in justification of its refusal to act that the statute which imposed upon it that duty is unconstitutional. In Thoreson v. Board, 19 Utah 18, 57 Pac. 175, this court held that, "where the statute requires an officer to perform a ministerial act, he will not be permitted in a mandamus proceeding to plead in justification of non-performance that the act would violate the Constitution."