[Civ. No. 3742.    Second Appellate District, Division One.    October 28, 1921.]

## E. P. JOCHIMSEN, Appellant, v. CITY OF LOS ANGELES (a Municipal Corporation), et al., Respondents.

[1] PUBLIC UTILITIES — MUNICIPAL WATERWORKS — REGULATION OF RATES — JURISDICTION OF RAILROAD COMMISSION. — Section 23 of article XII of the state constitution was not intended to and does not vest in the Railroad Commission · authority to regulate the rates to be charged by a municipal corporation in the sale of water to its inhabitants.

[2] ID.—DISCRIMINATION BETWEEN PRIVATE AND MUNICIPALLY OWNED PUBLIC UTILITIES—CONSTITUTIONAL LAW.—Section 23 of article XII of the state constitution, in excluding municipally owned public utilities from the jurisdiction of the Railroad Commission, is not violative of the fourteenth amendment to the federal constitution, and that section does not constitute an attempt to create an arbitrary discrimination and classification between persons engaged in the same kinds of business and under the same conditions.

[3] ID.—CLASSIFICATION OF OBJECTS OF LEGISLATION—WHEN REVIEWABLE.—The state may distinguish, select, and classify objects of legislation, and necessarily the power must have a wide range of discretion; and classification for such purposes is not invalid because not depending upon scientific or marked differences in things or persons or in their relations. It suffices if it is practical, and it is not reviewable unless palpably arbitrary.

APPEAL from a judgment of the Superior Court of Los Angeles County. John W. Shenk, Judge. Affirmed.

The facts are stated in the opinion of the court.

---

1. Applicability of public utility acts to municipal corporations owning or operating a public utility, notes, 10 A. L. R. 1432; 18 A. L. R. 946.

Harry Lyons for Appellant.

Jess E. Stephens, City Attorney, W. B. Mathews, Ray C. Eberhard and Trent G. Anderson for Respondents.

CONREY, P. J.—This action was brought to obtain an injunction restraining the city of Los Angeles, and the board of public service commissioners thereof, from increasing the rates charged for water furnished through and by means of its municipally owned water system, without the consent of the Railroad Commission of the state. The court having sustained a general demurrer to the complaint, judgment was entered in favor of the defendants. The plaintiff appeals from the judgment.

Only two questions are presented for decision. [1] Appellant first contends that by virtue of the constitution of the state of California, and the acts of the legislature, exclusive jurisdiction has been conferred upon the Railroad Commission to establish the rates to be charged in the sale of water as a public utility; and that by consequence the city of Los Angeles, while engaged in the business of furnishing water to the public in said city, may charge only such rates as have been established by order of the Railroad Commission. The supreme court of California, in a decision covering this same question, has determined the matter adversely to the contentions of appellant here. For reasons fully set forth in that decision, we are satisfied that section 23 of article XII of the constitution of California was not intended to and does not vest in the Railroad Commission authority to regulate the rates to be charged by the city of Los Angeles in the sale of water to its inhabitants. (*City of Pasadena* v. *Railroad Commission,* 183 Cal. 526 [10 A. L. R. 1425, 192 Pac. 25].)

[2] The second contention of appellant is that if it be held that municipally owned public utilities are not brought within the jurisdiction of the Railroad Commission by section 23 of article XII of the constitution, then that section should be held void as in violation of the fourteenth amendment to the constitution of the United States, because it denies to the plaintiff, or to any corporation or person who would be engaged in the operation of such public utility, the equal protection of the laws, in this, that it attempts to create an arbitrary discrimination and classification between

persons engaged in the same kinds of business and under the same conditions. But we are of the opinion that a municipality engaged in the business of furnishing water for public use is not engaged in such business under the same conditions as those pertaining to a private corporation or person furnishing water to the public.

[3] The state may distinguish, select, and classify objects of legislation, and necessarily the power must have a wide range of discretion. "Classification for such purposes is not invalid because not depending upon scientific or marked differences in things or persons or in their relations. It suffices if it is practical, and is not reviewable unless palpably arbitrary." (*Orient Ins. Co.* v. *Daggs,* 172 U. S. 557, 562 [43 L. Ed. 552, 554, 19 Sup. Ct. Rep. 281, 282, see, also, Rose's U. S. Notes].) The classification under consideration in the case at bar is practical and is based upon a reasonable exercise and discretion of the legislative power. Without attempting to exhaust the list of possible illustrations, we will adopt that used by the supreme court of Illinois in *Springfield Gas etc. Co.* v. *City of Springfield,* 292 Ill. 236 [126 N. E. 739]. We are informed that that case is now pending in the supreme court of the United States on writ of error. Nevertheless, we rely upon the state decision at this time because its reasoning appears to us to be correct upon the question now under consideration. [NOTE.—The Illinois decision was affirmed: U. S. Adv. Ops. 1921–22, p. 38.] The court said: "Municipalities under the Municipal Ownership Act are limited in rates and charges for the product furnished by their public utilities, and cannot operate them at a profit to the same extent as can private corporations, associations, or persons owning like utilities. They are required, under the act governing them, to keep separate accounts of the moneys received from the operation of their utilities, and such funds cannot be used as revenues except to discharge their obligations and expenses in the operation of the utilities. Their charges for such services are simply to be high enough to produce revenue sufficient to bear all costs of maintenance and operation, to meet interest charges on bonds and certificates issued on account thereof, and to permit the accumulation of a surplus or sinking fund sufficient to meet all outstanding

bonds or certificates at maturity issued on account of such utilities. The statute does not contemplate that the rates shall be higher or lower than for the purposes aforesaid, no matter what effect such rates and charges may have upon other corporations or persons owning or operating public utilities. . . . It is contemplated that private corporations and persons shall realize profits. The legislature had the right to assume that the rates and charges of each of these two classes of public utilities would not and could not be the same to consumers. It is clear, therefore, that the legislature acted within its constitutional rights and powers in enacting the two statutes and making different provisions in so far as the same were necessary to accomplish the purposes for which the two acts were enacted. It is equally clear that the legislature had the right and power to delegate to the municipalities the right of regulation and control of such municipally owned plants.'' So here, the charter of the city of Los Angeles, which vests in the board of public service commissioners the right to regulate the use, sale, and distribution of water belonging to the city, and to fix the rates to be charged therefor, declares that such rates ''shall be of uniform operation, as near as may be, and shall be fair and reasonable, taking into consideration, among other things, the nature of the use, the quantity supplied and the value of the service.'' The same section of the charter further provides, with respect to moneys received from the sale or use of water, ''that all such moneys shall be deposited in the treasury of the city to the credit of a fund to be known as the 'Water Revenue Fund,' and shall be kept separate and apart from other moneys of the city, . . . '' Here follow statements governing the manner of paying out moneys from the water revenue fund, which shall be so paid for the stated purposes, ''and for no other purpose.'' (Stats. 1917, pp. 1694, 1695.) We are satisfied that the nature of the business of furnishing water as a public utility by a private person or corporation differs from the nature of that business when conducted by a municipal corporation, both with respect to the differences inherent in a municipal corporation as distinguished from a private person or corporation and in the purposes for which the business is conducted and the methods of conducting

such business. These differences are amply sufficient to justify the classification made by the laws of this state. The judgment is affirmed.

Shaw, J., and James, J., concurred.