[L. A. No. 11958. In Bank.—December 31, 1930.]

JOSE D. CARTER et al., Appellants, v. JAY W. STEVENS, as State Fire Marshal, et al., Respondents; L. M. LEWIS et al., Interveners and Appellants.

William Schreider for Appellants.

U. S. Webb, Attorney-General, and James S. Howie, Deputy Attorney-General, for Respondents.

SEAWELL, J.—In 1927 the legislature adopted an act effective August 2, 1927, entitled ''An act to reduce the fire *insurance* hazards of the business of clothes cleaning establishments, providing for the enforcement thereof by the state fire marshal, providing ways and means for enforcement and providing penalties for violations.'' (Stats. and Amdts. 1927, p. 1924.) The insertion of the italicized word *insurance* was clearly an inadvertence and must be disregarded. The intent of the title is in nowise affected by so doing.

In 1929 the legislature adopted an act effective August 14, 1929, to amend the title (republishing the same in full) and sections 1, 2, 3 and 4 of said 1927 act ''and to add two new sections thereto to be known as section 5, relating to hazardous buildings and equipment, and section 6, creating a division of industrial fire safety in the department of industrial relations and transferring to said division the administration and enforcement of said act.'' (Stats. and Amdts. 1929, p. 288.)

On January 13, 1928, Jose D. Carter, proprietor of a cleaning and dyeing plant known as The Poppy, located in the city of Pasadena, and a number of other persons, corporations and firms engaged in the business of operating and conducting dyeing and clothes-cleaning, feather cleaning

and fabric cleaning plants located within the city of Los Angeles and other cities within Los Angeles County, united in an action to enjoin Jay W. Stevens, as fire marshal of the state, and his assistants and deputies from enforcing certain rules promulgated by him by virtue of the provisions of said 1927 act, which they threatened to do, against appellants herein, on account of their refusal to comply with the same.

The original act, doubtless, was revised by the legislature of 1929 with the object in mind of avoiding the objections which were urged against it upon the hearing of the cause in the court below. Certain sections of the original act remain intact, four were amended and two new sections were added.

The complaint herein was filed January 13, 1928, and the decree was entered July 13, 1929, approximately one month prior to the day on which the amended act of 1929 became effective, if valid. This being so, the original act, which is under attack by appellants, has long since become dead and the questions now raised would be moot unless some of the sections of the original act or some portions of them which were continued in the act as amended remain vulnerable to the assault as then and there made. We must consider the objections made by the appellants with reference to the act as it now exists and not as to what it once was.

The trial court upheld the constitutionality of said 1927 act, including that portion which delegated to the state fire marshal authority to determine the conditions upon which persons may engage in the business of conducting and operating clothes-cleaning and dyeing establishments. It enjoined the threatened enforcement of the *rules* promulgated by the state fire marshal against certain of the appellants and interveners, on the ground that as applied to them the requirements of said rules were oppressive and burdensome and entailed unreasonable and unnecessary expense to them. An additional reason assigned for granting the injunction was that the system and apparatus used in said certain plants were reasonably safe from fire hazard. Others were granted injunctive relief on the ground that their plants were constructed and operated in accordance with the ordinances of the cities within which they were located.

Certain proprietors of said dyeing and cleaning establishments, being dissatisfied with anything less than a decree invalidating substantially the entire act, including the portions which are re-incorporated in the 1929 act, have appealed from the whole of the judgment.

Said act as it now exists and has existed since August 14, 1929, defines the term ''clothes cleaning establishment'' as any building, room, etc., in which the business or process of cleaning, dyeing or renovating clothes, wearing apparel, feathers or any fabrics or textiles, or hats is conducted or carried on, and where the process of such cleaning, dyeing or renovating is accomplished by the use of any volatile and inflammable product or substance, and where any liquid volatile and inflammable product or substance in an amount exceeding one gallon in the aggregate of all such volatile and inflammable products is kept or stored, or where any viscous or other compound, powder or solid volatile and inflammable product or substance in the aggregate amount of more than eight pounds is kept or stored. The act then proceeds to define and describe the various processes of cleaning and dyeing and the machinery and appliances used in clothes-cleaning establishments. A better understanding of the hazards of the business may be had from a description of the uses and purposes of the ''hazardous room''. It is defined as a room wherein any volatile or inflammable product is kept or stored; or wherein any volatile or inflammable product is distilled, redistilled, filtered, clarified, etc., or wherein any still, filter, clarifier, extractor, washer or tumbler is installed; or wherein any dust wheel is installed and the same is used for drying or deodorizing purposes following the operation of cleaning or dyeing; or wherein any clothes, wearing apparel, feathers, hats, fabrics or textiles are dried or the odor removed therefrom after having been cleaned or dried by a cleaning process as in said act defined. A boiler-room is defined as a room wherein is maintained or operated any appliances, machinery or apparatus for the generation of steam or the heating of water where the American Society of Mechanical Engineers or other standard rating of such appliances or apparatus indicates a capacity thereof in excess of three horsepower or more in one unit. Volatile and inflammable products are

defined as any liquid, viscous or other compound, powder or solid product or substance having the capacity to evaporate and during such evaporation generate and emit a gas or vapor propagative of flame or fire, or explosive in nature, or explosive incident to evaporation.

The term "approved" where used in said act means the authoritative sanction of the department of industrial relations prior to employment, installation, or use in or about a "clothes cleaning establishment" or a spotting and sponging establishment.

Section 2 of said act provides that it shall be unlawful for any person, corporation, etc., to establish, maintain and operate a clothes cleaning establishment or to alter or reconstruct an establishment either as to buildings, machinery or other equipment or apparatus, or to cleanse any clothing, wearing apparel, feathers, hats, fabrics, or textiles by means of a process defined as "cleaning"; or to keep or store therein or upon the premises wherein such cleaning process is operated any volatile and inflammable product as in said act defined, in any structure or in any manner other than approved by the state fire marshal, or without first making application to and obtaining from the state fire marshal of the state a license so to do. Every such permit or license shall contain the name of the person, corporation, copartnership or association applying therefor and the name of the establishment and shall state the location of the establishment and the proprietors thereof, the maximum amount of volatile and inflammable product that is to be or may be stored in or upon said premises and the exact location of the tanks in which any volatile and inflammable product is to be or may be stored. Every application for a permit or license to establish and operate said establishment or to alter or reconstruct an existing establishment shall be accompanied by four blue-prints not exceeding 24x42 inches, on which shall be shown a plot plan made to a scale showing the boundary lines of the property devoted or to be devoted to the establishment; all adjacent streets, alleys, easements; the materials to be used in the construction of all existing and proposed buildings, including that of existing buildings on adjacent property; also the dimensions and the location of rooms, the kind of materials to be used in the construction

of the boiler house, hazardous buildings, and such other data as would assist the department of industrial relations in passing upon the application. Section 2 provides that ''no change as to location, arrangement, or materials of construction will be permitted in the execution of a design unless the same have been approved by the department of industrial relations''. The permit or license shall be conspicuously posted in the building and shall be accessible to the representatives of the department of industrial relations, or the representatives of any city or county fire department within the state whenever request is made for its inspection. Subdivision (f) of section 2, to which appellants very strenuously object as an unlawful and unlimited delegation of judicial power, provides: ''An application for such license shall be made to the department of industrial relations at its office within the State of California, and before the granting of such permit or license the department of industrial relations, or its duly authorized representative, shall make a thorough investigation into the fitness of such applicant to conduct a 'clothes cleaning establishment'. If such investigation reveals that the 'clothes cleaning establishment', or the plans, specifications, premises, or character or ability of such applicant to conduct a 'clothes cleaning establishment' are not in compliance with the provisions of law or in any manner jeopardize the public welfare or in any manner in the opinion of the department of industrial relations, or its duly authorized representatives, makes such proposed establishment a menace to the public welfare and safety, the department of industrial relations in its discretion is empowered to deny such applicant a permit or license to establish or maintain a 'clothes cleaning establishment'.''

The legislature has very properly placed the operation of clothes-cleaning establishments, conducted in the manner described in said act, and in which the use of volatile and inflammable substances and heat, steam and hot water play the principal part, in the list of ''hazardous businesses''. That the whole subject matter comes within the power of police regulation there is not room for a doubt.

In construing statutes it is a cardinal rule that the words of the statute must be given a meaning that is germane to the subject matter of legislation and consistent with

rational deductions, rather than a meaning that would create an absurdity. ▆ So, in interpreting the meaning of the words "character or ability" of the applicant to conduct a clothes-cleaning establishment, the nature of the business and the dangers that inhere in it; the care and vigilance to be exercised in properly safeguarding others as well as the temptations which the business may offer to persons who have a tendency to lead a questionable life, are matters to be considered in arriving at the purpose of statutes. We see nothing in the words which are sharply criticised by appellants that confers unlimited or arbitrary powers upon the Department of Industrial Relations or upon the state fire marshal. The statute expressly authorizes that which the law impliedly authorizes, that is to say, if the applicant is found to be lacking in integrity or is recklessly indifferent to the rights and safety of others, or if he is lacking in ability to the degree that it would be dangerous to others for him to conduct a clothes-cleaning establishment, the Department of Industrial Relations may reject his application and deny him a permit or license.

Section 3, as amended, which is denounced by appellants as being unconstitutional on a number of grounds, follows:

"The department of industrial relations shall have the power and authority to prescribe rules, regulations and specifications governing construction, equipment, maintenance and operation of 'clothes-cleaning establishments' deemed necessary to protect life and property against fire menace; provided, however, that such regulations in no manner restrict the operations of other statutes regulating such establishments; and provided, further, however, that any order of the department of industrial relations revoking the license of any clothes-cleaning establishment is subject to a review by the court and can be set aside only upon the grounds that the department of industrial relations has exceeded its powers or has been guilty of fraud in the use of such order. The department of industrial relations is further empowered and directed to abate fire nuisances in any 'clothes-cleaning establishment' pending a hearing upon such nuisance.

"In the event that any person, firm, association, copartnership, corporation or organization to whom such license or permit has been issued to establish, conduct, maintain or

operate a 'clothes-cleaning establishment' or to store or keep any volatile and inflammable product therein, shall violate or shall cause or permit to be violated any of the provisions of this act regulating such 'clothes-cleaning establishment', or shall conduct, maintain, or operate, or cause or permit to be conducted, maintained or operated such 'clothes-cleaning establishment' in an unlawful or careless manner dangerous to persons or property, within the discretion of the department of industrial relations or its duly authorized representatives, it shall be the duty of said department of industrial relations, and said department of · industrial relations is hereby authorized and directed to revoke the permit or license issued to any such person, firm, association, copartnership, corporation or organization; provided, however, that no such permit or license shall be revoked until after a hearing as hereinafter provided has been had by said department of industrial relations in the matter of revocation of such permit or license. Notice of such hearing shall be given in writing and served upon the holder of such permit. . . . ''

The act with considerable particularity prescribes. the dimensions, height and location of a hazardous building and the distance it shall be from the boundary line of the lot upon which it is located and its distance from street lines. The location, construction, equipment and maintenance of the hazardous building is set out in the statute in detail. It provides, however, that where such buildings were in use on August 2, 1927, the effective day of the first statute on the subject, they shall be made to conform with the requirements of the act so far as it is physically possible. The statute very carefully sets forth in detail the plans and specifications of the plants and so far as the buildings, material, equipment and machinery are concerned, but little is left to the discretion of the Department of Industrial Relations. Violations of the provisions of the act are punishable as a misdemeanor by fine of not less than $200 or imprisonment not less than thirty days, or by both. It is further provided that if any sentence, clause or portion of the act should be declared unconstitutional such decision shall not invalidate any remaining portions thereof.

We are not now concerned with the extent of the state fire marshal's power to promulgate said rules by authority of the provisions of the 1927 act, since so much of the substance of said rules as was deemed necessary to effectuate the objects of the act has been written into the amended statute, and it is not claimed that the Department of Industrial Relations, as successor of the state fire marshal, has made new or additional rules or that any attempt has been made by it to enforce the rules made by virtue of a superseded statute. It is not to be presumed that the Department of Industrial Relations will exceed its authority in making such rules as may be necessary to administer its office.

Little need be said in defense of the claim made by appellants that the 1929 act is void as being in violation of article III, section 1, and article IV, section 1, state Constitution.

Substantially every argument advanced by appellants in support of their contention that the act fails to set up any definite standard or test by which delegated power is to be exercised by the enforcement agency with which a citizen may comply and demand a license; or that it confers arbitrary power upon said agency and that said act grants to an enforcement agency judicial or legislative powers, is answered by this court in *Gaylor* v. *City of Pasadena,* 175 Cal. 433 [166 Pac. 348, 349]. That decision so pointedly answers the arguments made in the instant case that we feel justified in quoting from it to a considerable extent. There the validity of an ordinance of the city of Pasadena which delegated to the city electrician the power to determine whether electric wiring in buildings within the city was dangerous to life or property was attacked. The ordinance did not provide what conditions he must find existing before he could determine that the said installation was unsafe or dangerous. With substantially the same questions raised in the instant case before him, Mr. Justice Henshaw delivered a very able and comprehensive opinion, much of which may well be republished:

"Even a casual observer of governmental growth and development must have observed the ever-increasing multiplicity and complexity of administrative affairs—national, state, and municipal—and even the occasional reader of the law must have perceived that from necessity, if for no better

grounded reason, it has become increasingly imperative that many *quasi*-legislative and *quasi*-judicial functions, which in smaller communities and under more primitive conditions were performed directly by the legislative or judicial branches of the government, are intrusted to departments, boards, commissions and agents. No sound objection can longer be successfully advanced to this growing method of transacting public business. These things must be done in this way or they cannot be done at all, and their doing, in a very real sense, makes for the safety of the republic, and is thus sanctioned by the highest law. For, as the Supreme Court of the United States declares: 'Indeed, it is not too much to say that a denial to Congress of the right, under the Constitution, to delegate the power to determine some fact or the state of things upon which the enforcement of its enactment depends, would be "to stop the wheels of government" and bring about confusion, if not paralysis, in the conduct of the public business.' (*Union Bridge Co.* v. *United States,* 204 U. S. 364 [51 L. Ed. 523, 27 Sup. Ct. Rep. 367].)

"Since, as has been said, the city council of Pasadena would have in any proper case the unquestioned right under the exercise of its police powers to compel a householder to make good the electric appliances upon his premises, the present problem narrows itself down to a determination whether or not in the method which was adopted they conferred upon a subordinate officer or agent unreasonable powers, and herein the controlling consideration is not that the power conferred may be unreasonably or oppressively exercised, for every presumption is that it will be honestly and reasonably exercised. 'Laws are not made upon the theory of the total depravity of those who are elected to administer them; and the presumption is that municipal officers will not use these small powers villainously and for purposes of oppression and mischief.' (Citing cases.) Therefore, eliminating the possibility of an unjust and oppressive use of the power against which the courts will interfere (*New York* v. *Van de Carr,* 199 U. S. 552 [50 L. Ed. 305, 26 Sup. Ct. Rep. 144]; *Yick Wo* v. *Hopkins,* 118 U. S. 356 [30 L. Ed. 220, 6 Sup. Ct. Rep. 1064]), the question is: Can it be justly said that this delegated power is either

in its terms illegally oppressive or in its terms lacks definiteness, thus allowing too great a play to the discretion of the city electrician? That an official charged with such a duty as this may, and indeed must, exercise discretion precisely as he may or must exercise judgment is, of course, true, but this fact in no way militates against the validity of the law, for, as said in the Van de Carr case, *supra*, 'the authority sustained is the grant of power to issue or withhold permits in the honest exercise of a reasonable discretion'. A brief review of a few of the many cases will illustrate the nature and extent of powers exercised by inferior tribunals and officers whose grants of power have been upheld. The most familiar to which no citation of authority is necessary are the extraordinary grants of power, without express constitutional authority, by Congress and state legislatures to interstate commerce and to railroad commissions. While recognizing that the Congress of the United States is the sole lawmaking power for all of its territory, the Supreme Court of the United States has held that the creation by Congress of a commission and the vesting in that commission of power to maintain a government in the Philippine Islands and to make necessary laws for that purpose was not an unconstitutional surrender by Congress of its legislative powers or an unconstitutional transference of those powers to an inferior board. (Citation of cases.) A law of the state of Michigan which created a registration board of physicians and empowered the board to say what physicians were duly and legally registered and to forbid the practice of the profession to those not duly registered was not, as held by the Supreme Court of the United States, an illegal nor unreasonable delegation of power, the court further saying that due process of law is not necessarily judicial process and that the right of appeal is not essential to due process of law. (*Reetz* v. *Michigan,* 188 U. S. 505 [47 L. Ed. 563, 23 Sup. Ct. Rep. 390].) An act of Congress investing the secretary of war and his subordinates with power to determine and declare whether a bridge over navigable waters is an unreasonable obstruction to navigation and to order its alteration or removal is a reasonable delegation of power, since Congress may clothe an executive officer with power to ascertain whether certain specific facts exist and thereupon

to act in a prescribed manner without in so doing granting in an unconstitutional sense legislative or judicial powers to such an officer. (*Monongahela Bridge Co.* v. *United States,* 216 U. S. 177 [54 L. Ed. 435, 30 Sup. Ct. Rep. 356].) . . . The requirements of the state legislature that no milk shall be received for sale or delivery to the city of New York without a permit in writing from the board of trade and subject to the conditions of such permit is a reasonable delegation of authority (*New York* v. *Van de Carr, supra*) ; and like delegated powers of censorship in permitting or prohibiting the display of moving-picture films are held valid. (Citation of cases.)

''The ordinance before us does not define the conditions the city electrician must find to exist before he determines that the electrical apparatus is unsafe or dangerous. From the very nature and character of such apparatus it would be impossible for any ordinance so to do without working in many instances the very oppression which its language, necessarily general, is designed to prevent. As we have said, it is presumed that the city electrician will act fairly. It is also presumed that he is competent. An unnecessary liberality is shown in this ordinance in conferring, as it does, a right of appeal to the council, for the ordinance, if good at all, would unquestionably be good without such right of appeal, and the householder conceiving himself to be injured would be left to his action in court. This ordinance is peculiarly like the North Carolina statute construed by the Supreme Court of the United States in *Red 'C' Oil etc. Co.* v. *Board of Agriculture of North Carolina,* 222 U. S. 380 [56 L. Ed. 240, 32 Sup. Ct. Rep. 152]. The statute required only that illuminating oils 'be safe, pure and afford a satisfactory light', and gave to the state board of agriculture the power to establish rules and regulations and to determine what oils measured up to standard. The Supreme Court of the United States declared that this was not an illegal grant of legislative or judicial power and the requirements of the statute that illuminating oils should be 'safe, pure, and afford a satisfactory light', established a 'sufficient primary standard'. The matter is concisely and clearly stated in 2 Dillon (Municipal Corporations, 5th ed.), section 598, where, discussing the question, he says: 'The

fact that the dispensing power was apparently valid without restraint or qualification has been regarded as arising merely from the difficulty of defining in advance upon what conditions the permit shall be given or the dispensing power exercised.' It is concluded, therefore, that the ordinance here under consideration is not void, as unwarrantedly conferring upon the city electrician judicial or legislative powers, nor yet void because its terms are either indefinite, arbitrary, or oppressive. (*Ex parte Fiske,* 72 Cal. 125 [13 Pac. 310].)''

The 1929 act, being the only effective act in existence, provides the means by which a license may be obtained upon application to the Department of Industrial Relations, which must make a thorough investigation of the fitness of the applicant to conduct a clothes-cleaning establishment, as defined in the act. If it is found upon such investigation that the applicant is wanting in the respects pointed out in the statute, his application would, no doubt, be denied; if found otherwise, it would be granted. Of course the Department of Industrial Relations may not arbitrarily deny a license or permit, nor is it to be presumed that it will do so without good cause, and if it should, the courts are open for the correction of the wrong. A license may not be revoked without a hearing upon ample notice.

It does not appear that the due process clauses of either the state or federal Constitutions are impinged upon by the provisions of the 1929 act, which is a public safety measure.

As stated in the beginning, the appellants have appealed from the whole of the judgment, a part of which was in their favor and part was adverse to them. Neither the state fire marshal nor the Department of Industrial Relations, which was not made a party, has appealed. The act under which the rules were promulgated has been superseded by an amendment which sufficiently covers the subject matter as to render said rules unnecessary. Those portions of the original act which were carried into the amendment are held to be constitutional. It was the claim of the attorney-general from the beginning that the question of the validity of the rules became moot by the adoption of the act of 1929. That would seem to follow. No attempt seems to have been made

to thereafter enforce them. We are of the opinion that a decision in favor of the validity of the parts of the 1927 act which were incorporated in the 1929 act leaves appellants without an issue so far as the question of rules is concerned.

There seems to be no course other than to dismiss the appeal. It is so ordered.

Richards, J., Shenk, J., Waste, C. J., Curtis, J., and Langdon, J., concurred.